UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JORGE MARTINEZ ROMO, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 14 C 1891 |
| v. | ) ) | Judge Sara L. Ellis |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This putative class action stems from a dispute over who is responsible for paying assessments owed on a condominium when that condominium is purchased from a mortgagee. In 2013, Plaintiff Jorge Martinez Romo agreed to purchase a condominium from the Federal National Mortgage Association ("Fannie Mae"). Romo now sues Fannie Mae, alleging that Fannie Mae agreed to pay all outstanding condominium assessments prior to closing and that when it required Romo to pay six months' of assessments, Fannie Mae breached the purchase agreement and violated the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/1 *et seq.* ("ICFA"). Fannie Mae moves to dismiss, arguing that the Illinois Condominium Property Act, 765 Ill. Comp. Stat 605/1 *et seq.*, requires purchasers like Romo to pay six months' of assessments that had accumulated under the previous owner. Fannie Mae also contends that Romo waived his claims and that Count II fails to state a valid ICFA claim. Each of Fannie Mae's arguments fails at this stage: the Court cannot determine on the record before it that the Condominium Property Act or the contract's waiver provisions apply here, and Romo has plausibly alleged a non-redundant ICFA claim. Therefore, the motion to dismiss [26] is denied.

# BACKGROUND[1]

On October 10, 2013, Jorge Martinez Romo offered to purchase a condominium at 1550 South Blue Island Avenue in Chicago, Illinois. The condominium was managed by the University Station Condominium Association ("University Station") and was held by Fannie Mae as mortgagee. When making his offer, Romo provided Fannie Mae with $5,000 in earnest money, as Fannie Mae required him to do. Fannie Mae accepted Romo's offer in December of 2013. Fannie Mae and Romo entered into a real estate purchase addendum (the "Addendum") memorializing their agreement.

The Addendum is a form contract that was created by Fannie Mae and presented to Romo for his signature. A few provisions in the Addendum are relevant to the pending motion. Section 10 of the Addendum is titled "Closing Costs and Adjustments." Section 10(a) refers to the manner in which Romo and Fannie Mae would satisfy the outstanding assessments due to University Station. But as discussed below, Romo and Fannie Mae dispute what § 10(a) actually requires of each. Sections 10(d) and 17(D) require Romo to waive and release Fannie Mae from "all claims arising from the adjustments or prorations or errors in calculating the adjustment or prorations that are or may be discovered after closing." Doc. 1-2 at § 10(d); see also Doc. 1-2 at § 17(D). Section 19(a) of the Addendum set out that Romo would forfeit his earnest money if he breached the Addendum. Closing was set for January 10, 2014.

On December 23, 2013, University Station, which is not a party to this suit, sent a letter to Romo and Fannie Mae outlining the assessments owed on the condominium (the "December

---

[1] The facts in the background section are taken from Romo's complaint and exhibits attached thereto and are presumed true for the purpose of resolving Fannie Mae's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). However, "to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls." *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).

23 letter"). The letter states that there was $4,270.32 in outstanding assessments due on the condominium. Under "General Information," the letter states that "Unit #614 is responsible for the amount of $3,010.30 (seller) for outstanding assessments and $1,260.02 (buyer) for six months previous owner assessments. If the balance is not paid prior to or at closing the amount will remain on the account and become the responsibility of the new owner." Doc 1-3 at 1. The December 23 letter also sets out that monthly assessments were $460.05. *Id.*

On January 8, 2014, Fannie Mae informed Romo that he would be responsible for paying six months' of outstanding assessments. On January 10, 2014, Romo's counsel sent a letter to Fannie Mae notifying it that Romo would pay the "six months of outstanding assessments under protest and [that he] reserved all rights under the Addendum to sue for Fannie Mae's breach." Doc. 1 ¶ 15. At the January 10 closing, when Fannie Mae refused to pay the six months' of outstanding assessments, Romo paid this amount under protest.[2]

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct.

---

[2] The complaint and the attachments thereto do not identify exactly how much money in outstanding assessments Romo was required to pay at closing. Romo's response to the motion to dismiss indicates that he was required to pay $1,260.02 in assessments. Doc. 31 at 16. This figure matches the amount that University Station allotted to Romo in the December 23 letter, but it does not correspond with the stated monthly assessments set out in that letter—$460.05—multiplied by six. While curious, this dispute is not material to the Court's Opinion.

3

1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Romo alleges that by requiring him to pay six months' worth of outstanding assessments just before closing, Fannie Mae breached the Addendum (Count I) and engaged in an unfair practice in violation of ICFA (Count II). Fannie Mae seeks dismissal as a matter of law on the basis that: (1) the Illinois Condominium Property Act requires Romo to pay the six months' of assessments; (2) Romo waived his right to bring any claims based on prorating the assessments; and (3) the complaint fails to state a valid ICFA claim. The Court takes Fannie Mae's arguments in turn.

**I.     The Illinois Condominium Property Act**

Fannie Mae contends that the Illinois Condominium Property Act required Romo to pay six months' of outstanding assessments as a matter of law. The statute states, in relevant part:

> The purchaser of a condominium unit at a judicial foreclosure sale, other than a mortgagee, who takes possession of a condominium unit pursuant to a court order or a purchaser who acquires title from a mortgagee shall have the duty to pay the proportionate share, if any, of the common expenses for the unit which would have become due in the absence of any assessment acceleration during the 6 months immediately preceding institution of an action to enforce the collection of assessments, and which remain unpaid by the owner during whose possession the assessments accrued.

765 Ill. Comp. Stat. 605/9(g)(4). Fannie Mae asserts that "[a]pplying the statute is straightforward here: Romo, as purchaser acquiring title from Fannie Mae, a mortgagee, had the duty to pay up to six months of unpaid common expenses." Doc. 27 at 4–5.

4

But applying the Condominium Property Act is not straightforward here. While the statute may ultimately govern the outcome of this case, the Court cannot find that it applies at this stage. By its terms, the statute is limited to assessments incurred "during the 6 months immediately preceding institution of an action to enforce the collection of assessments." 765 Ill. Comp. Stat. 605/9(g)(4). However, the complaint and attachments thereto do not reveal whether an action to enforce collection of assessments ever actually occurred here.[3] Thus, the Court cannot determine at this time that the Condominium Property Act applies here. Moreover, the statute's terms indicate that buyers are required to cover unpaid assessments that came due in the six months prior to the action to enforce collection. But there is nothing in the record that makes clear that the condominium's previous owner failed to pay his assessments during the six months immediately preceding an assessment enforcement action—if such an action occurred—or that Romo's payment applied to that period. These fact questions preclude the Court from ruling at this stage that the Condominium Property Act required Romo to pay the demanded amount.

## II. Waiver and Release

Fannie Mae also contends that the complaint must be dismissed because the Addendum's waivers and releases bar Romo's claims. Section 10(d) of the Addendum states: "Purchaser shall release Seller from any and all claims arising from the adjustments or prorations or errors in calculating the adjustment or prorations that are or may be discovered after closing." Doc. 1-2 § 10(d). Similarly, § 17(D) of the Addendum states that "THE PURCHASER WAIVES . . . ANY AND ALL CLAIMS ARISING FROM THE ADJUSTMENTS OR PRORATIONS

---

[3] The record does not indicate whether University Station instituted an enforcement action within the confines of the foreclosure or elsewhere. While the statute does not define an "action," at least one observer noted that "the majority of the evidence suggests that instituting an action should require an official filing with a court." Attorneys' Title Guaranty Fund, Condominium Association and Common Interest Community Liens and Mortgage Foreclosure, http://www.atgf.com/underwriting/news/condominium-association-and-common-interest-community-liens-and-mortgage.

5

OR ERRORS IN CALCULATING THE ADJUSTMENTS OR PRORATION THAT ARE OR MAY BE DISCOVERED AFTER CLOSING." *Id.* at § 17(D).

On the record before it, the Court finds that these provisions do not bar Romo's claims. First, both provisions are expressly limited to claims the basis of which Romo discovers *after closing*. Here, Romo discovered the basis for his claim—and informed Fannie Mae of the same—prior to closing. Moreover, both waiver provisions make clear that they apply only to adjustment and proration disputes. Fannie Mae argues in Section I of its brief that the concept of proration has nothing to do with the six months' of assessments at issue in this case. *See* Doc. 27 at 7 ("Proration is a concept that only applies when there is **shared** liability because there are multiple owners over a period of time, such as when property transfers in the middle of a month and a monthly fee or assessment is incurred for that month."). And the complaint and exhibits attached thereto do not indicate that the payment of six months' of assessments is an "adjustment" as the term is used in the Addendum. According to Fannie Mae, Romo was required to pay six months' of outstanding assessments as a result of the Condominium Property Act, not any provision in the Addendum. The Court is not convinced by Fannie Mae's argument in Section II of its brief that Romo's claims concern an "adjustment or proration" and are waived as a matter of law. Thus, the Court rejects Fannie Mae's argument that Romo has waived his claims.

## III. The ICFA Claim

In Count II, Romo alleges that Fannie Mae engages in a bait and switch by alerting him and other condominium purchasers on the eve of closing that they must pay for six months' of outstanding assessments or else they will lose the condominium and their earnest money. Romo claims that this constitutes an unfair business practice in violation of ICFA. Fannie Mae moves

to dismiss Count II, asserting that Romo cannot plausibly claim to have been deceived or oppressed because he was informed prior to closing that he would be responsible for six months' of assessments and he nevertheless elected to proceed with the purchase. Fannie Mae states, "[i]f the product or merchandise remains the same, there cannot be a bait and switch." Doc. 27 at 12. Fannie Mae contends that Romo received what he bargained for, albeit at a slightly higher price than he had anticipated.

Romo alleges that Fannie Mae's conduct constituted an unfair practice, not that it was deceptive.[4] Doc. 31 at 14. In order to state a valid unfair practice claim under ICFA, a plaintiff must allege that the defendant intentionally engaged in unfair conduct in the course of commerce that injured the plaintiff. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960, 201 Ill. 2d 403, 266 Ill. Dec. 879 (2002). A practice is unfair if it (1) "offends public policy," (2) is "immoral, unethical, oppressive, or unscrupulous," or (3) substantially injures consumers. *Robinson*, 775 N.E.2d at 961. A plaintiff need not demonstrate all three criteria in order to succeed; rather, a practice may be unfair "because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Cheshire Mortg. Serv., Inc. v. Montes*, 612 A.2d 1130, 1143–44, 223 Conn. 80 (1992)). Conduct is oppressive if denies the plaintiff a meaningful choice or places an unreasonable burden on the plaintiff. *G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.*, 871 F. Supp. 2d 763, 769 (N.D. Ill. 2012); *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008). More specifically, "[c]ourts interpreting the meaning of 'unfair practices' have held that a plaintiff states a claim under the ICFA where the defendant's conduct gave plaintiff no reasonable alternative to avoid

---

[4] By proceeding this way, Romo avoids the heightened pleading standard for fraud. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) ("Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b).").

incurring a charge or penalty." *Wendorf v. Landers*, 755 F. Supp. 2d 972, 979 (N.D. Ill. 2010) (collecting cases). In order to satisfy the substantial injury factor, a plaintiff must allege an actual economic injury. *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 526 (N.D. Ill. 2011).

Here, the complaint states a valid ICFA unfair practices claim. Romo plausibly alleges that Fannie Mae waited until the eve of closing to inform him that he would be responsible for six months' of assessments on the condominium. Romo further alleges that Fannie Mae took advantage of its superior bargaining position and Romo's lack of desirable alternatives. Romo explains that he ultimately paid the assessments because refusing to do so would have meant forfeiting his $5,000 in earnest money, losing the opportunity to purchase the condominium, and having to quickly find replacement housing. Accepting all factual allegations as true and drawing all reasonable inferences in Romo's favor, the Court finds that Romo has plausibly alleged that Fannie Mae's conduct was unethical, oppressive, or unscrupulous because it denied him of a meaningful choice at closing. *Wendorf*, 755 F. Supp. 2d at 979 (denying a motion to dismiss on an ICFA claim where plaintiffs alleged that defendants' late notice left plaintiffs with no choice but to incur a charge or penalty). Romo also plausibly alleges that the conduct caused a substantial injury, as he claims that he suffered economic injury as a result. *Michaels Stores*, 830 F. Supp. 2d at 527 (finding that plaintiffs plausibly alleged a substantial injury when they claimed that they lost money as a result of defendant's conduct). Moreover, Romo's alleged injury is undeniably substantial when aggregated among the many purported victims. *Centerline*, 545 F. Supp. 2d at 780 ("Even very small individual harms can be considered substantial, if they are part of a practice that, in the aggregate, causes substantial losses to the public as a whole.").

8

Fannie Mae also urges that the Court dismiss Romo's ICFA claim because it is redundant to his breach of contract claim. Under Illinois law, "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844, 216 Ill. 2d 100, 296 Ill. Dec. 448 (2005). The parties disagree on what "more" a plaintiff is required to allege. Applying *Avery* in a breach of warranty case, a court in this district denied a motion to dismiss an ICFA claim because the plaintiff alleged not only a breach of warranty, but also that the defendant failed to disclose a material fact about the product. *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 949 (N.D. Ill. 2013) ("This additional allegation is important. It is well established that '[a]n omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud.'" (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595, 174 Ill. 2d 482, 221 Ill. Dec. 389 (1996))). And in *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, the Seventh Circuit reversed dismissal of a common law fraud claim, finding that the plaintiff had adequately pleaded fraud by alleging that the defendant never intended to honor the contract: "Simple breach of contract is not fraud, but making a promise while planning not to keep it *is* fraud." 570 F.3d 849, 854 (7th Cir. 2009). Thus, the Court finds that Romo's ICFA claim is not merely redundant of his breach of contract claim. Romo plausibly alleges that Fannie Mae never intended to honor its obligation to pay the assessments, that Fannie Mae intentionally withheld its true intentions until the eve of closing, and that given the parties' relative bargaining position Romo had no meaningful choice but to pay the assessments. Romo may proceed to discovery on his unfair practices ICFA claim.

## CONCLUSION

For the reasons stated above, Fannie Mae's motion to dismiss [26] is denied.

Dated: November 4, 2014

_____
SARA L. ELLIS
United States District Judge